1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9

STEVEN TREVINO,
10   an individual,

11                                   NO. CIV. S-07-2106 LKK/DAD
              Plaintiff,

12
        v.

13                                           O R D E R

LASSEN MUNICIPAL UTILITY
14   DISTRICT, et al.,

15
              Defendants.
16   _____/

17       Plaintiffs Steven and Amy Trevino have brought suit against

18   Lassen Municipal Utility District ("LMUD"), Steven Trevino's former

19   employer, and the individually named defendants who are employees

20   of LMUD for alleged harms he suffered related to the termination

21   of his employment.

22       Defendants LMUD, Cady, and Luhring have moved to dismiss

23   several of plaintiffs' claims and have moved to strike the request

24   for punitive damages and attorneys fees. For the reasons provided

25   herein, the court grants each motion in part and denies each in

26   part.

                                  1

1    The plaintiffs also seek leave to supplement the complaint
2    with allegations of events that have occurred since the filing of
3    the complaint. Given the court's January 16, 2008 order scheduling
4    order in which the plaintiff was given leave to file a second
5    amended complaint, the court denies this request as moot.

6                    **I. FACTUAL ALLEGATIONS AND BACKGROUND[1]**

7    In March 2007, plaintiff Steven Trevino was employed at LMUD
8    as Electric Superintendent / Operations Manager. He had worked at
9    LMUD since 1991 and during the course of his employment had never
10   been subject to disciplinary action. Defendant Cady was, at the
11   times relevant to the complaint, the General Manager of LMUD and
12   defendant Luhring was Assistant General Manager.

13   On March 10, 2007 plaintiff Steven Trevino was playing golf
14   with a companion at Diamond Mountain Golf Course. He was approached
15   by an agent of the golf course and a dispute ensued as to whether
16   the plaintiff had payed his green fee. Eventually the police
17   arrived, as did defendant Cady, who had a legal interest in the
18   golf course. Defendant Cady advised the plaintiff that he was
19   thereby placed on administrative leave from his job. Defendant Cady
20   made additional statements that caused the plaintiff to believe
21   that his employment was terminated.

22   On March 12, 2007, the plaintiff returned his company keys and
23   cellular phone. He was informed by defendant Luhring that he was
24   on administrative leave and should be available to return to work

25   _____

26   [1]The facts are derived from the plaintiff's First Amended
     Complaint unless otherwise noted.

1   on two hours' notice. On March 15, 2007, defendant Cady filed a
2   restraining order against the plaintiff; the hearing for this
3   restraining order was set for April 25, 2007.

4        On March 20, 2007, defendant Luhring issued a Notice of Intent
5   to Terminate to the plaintiff, which informed him that a Skelly
6   hearing would be held on March 26, 2007. The Notice advised that
7   defendant Luhring had been appointed to review the possibility of
8   termination and take action. This was based upon the statements of
9   defendant Cady and defendant Giannotti, a former board member of
10  LMUD and agent of the Diamond Mountain Golf Course, and a police
11  report regarding the incident at the golf course. The Notice stated
12  that the police report would be provided to the plaintiff when it
13  was available.

14       On March 21, 2007 the plaintiff's attorney requested a
15  continuance of the Skelly hearing and demanded the records upon
16  which the discipline action was based. In a March 23, 2007 letter,
17  defendant Luhring declined to continue the hearing and stated that
18  the records had been provided to the plaintiff on the previous day.
19  The plaintiff alleges that the police report was not provided to
20  him until March 30, 2007.

21       The Skelly hearing was held on March 26, 2007. Although not
22  alleged expressly, it appears from the plaintiff's complaint that
23  he was terminated as a result of the hearing. The written decision
24  of the hearing was issued on May 10, 2007. The plaintiff filed an
25  appeal to the board on May 11, 2007. On July 24, 2007, LMUD
26  appointed a hearing officer for the appeal. The hearing officer was

3

1  Steve Gross, who is alleged to have represented LMUD and/or
2  defendant Cady in the past. As of the filing of the first amended
3  complaint, the appeal hearing had not been conducted.

4      Under LMUD General Manager Administrative Procedure policy
5  number 2006-03, employees are to be terminated for cause only. This
6  policy allows for a Skelly hearing for "Major Discipline" actions.
7  Policy number 2006-03(4)(b) requires that the General Manager or
8  his designee issue a written decision within five business days of
9  the Skelly hearing and that the employee may appeal this decision
10 within five days of its issuance. This policy also provides that,
11 unless LMUD had appointed a "Standing Hearing Officer," the Board
12 is required to designate at its next scheduled meeting a hearing
13 officer who is neutral to the dispute and who possesses legal
14 training to conduct a fair and impartial appeal hearing. The
15 hearing officer must hold the appeal hearing within thirty days of
16 the notice of appeal and must issue a written report that makes
17 finding of fact and recommends the disciplinary action be either
18 affirmed, modified, or overturned. This report is then to be
19 considered by the Board at its next regular meeting, after which
20 it must issue a final decision on the disciplinary action.

21     While this motion was pending, the court issued a scheduling
22 order on January 16, 2008, granting the plaintiff leave to file a
23 second amended complaint. The plaintiff filed his second amended
24 complaint on January 24, 2008. The second amended complaint is
25 substantially similar to the first amended complaint. The court
26 therefore treats the motion to dismiss as directed to the second

4

1  amended complaint, to the extent of the overlap between the two

2  complaints.

3                          **II. STANDARDS**

4  **A.   Standard for Dismissal Pursuant to Federal Rule of Civil**

5       **Procedure 12(b)(6)**

6       On a motion to dismiss, the allegations of the complaint must

7  be accepted as true. <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).

8  The court is bound to give the plaintiff the benefit of every

9  reasonable inference to be drawn from the "well-pleaded"

10 allegations of the complaint.  <u>See</u> <u>Retail Clerks Intern. Ass'n,</u>

11 <u>Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).

12 Thus, the plaintiff need not necessarily plead a particular fact

13 if that fact is a reasonable inference from facts properly alleged.

14 <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 648 (1963)

15 (inferring fact from allegations of complaint).

16      In general, the complaint is construed favorably to the

17 pleader.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  The

18 court may not dismiss the complaint if there is a reasonably

19 founded hope that the plaintiff may show a set of facts consistent

20 with the allegations.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct.

21 1955, 1967-69 (2007).  In spite of the deference the court is bound

22 to pay to the plaintiff's allegations, however, it is not proper

23 for the court to assume that "the [plaintiff] can prove facts which

24 [he or she] has not alleged, or that the defendants have violated

25 the . . . laws in ways that have not been alleged." <u>Associated</u>

26 <u>General Contractors of California, Inc. v. California State Council</u>

1    of Carpenters, 459 U.S. 519, 526 (1983).

2    **B.   Standard for Motion to Strike Pursuant to Federal Rule of**

3        **Civil Procedure 12(f)**

4        Rule 12(f) authorizes the court to order stricken from any

5    pleading "any redundant, immaterial, impertinent, or scandalous

6    matter."  A party may bring on a motion to strike within 20 days

7    after the filing of the pleading under attack.  The court, however,

8    may make appropriate orders to strike under the rule at any time

9    on its own initiative.  Thus, the court may consider and grant an

10    untimely motion to strike where it seems proper to do so.  See 5A

11    Wright and Miller, Federal Practice and Procedure: Civil 2d § 1380.

12        Motions to strike are generally viewed with disfavor, and will

13    usually be denied unless the allegations in the pleading have no

14    possible relation to the controversy, and may cause prejudice to

15    one of the parties. See 5A C. Wright & A. Miller, Federal Practice

16    and Procedure: Civil 2d § 1380;  See also Hanna v. Lane, 610 F.

17    Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to

18    whether the challenged matter may raise an issue of fact or law,

19    the motion to strike should be denied, leaving an assessment of the

20    sufficiency of the allegations for adjudication on the merits.

21    See 5A Wright & Miller, supra, at § 1380.

22                    **III. ANALYSIS**

23        The plaintiff has alleged eight causes of action, directed at

24    LMUD and the individual defendants, with the exception of his fifth

25    cause of action for breach of contract, which is directed only at

26    LMUD. The defendants LMUD, Cady, and Luhring have moved to dismiss

1  plaintiff's first, second, third, fifth, sixth, and seventh claims.

2  The court grants the motion in part and denies it in part.

3      The defendants have also moved to strike the request for

4  punitive damages against LMUD and attorneys' fees for plaintiff's

5  state and common law causes of action. The court denies the motion

6  in part and grants it in part.

7  **A.   Motion to Dismiss**

8      **1.   First Cause of Action: Deprivation of Federal Procedural**

9           **Due Process Rights**

10     The plaintiff's first cause of action alleges that his

11  property rights were violated by the wrongful conduct of the

12  defendants in terminating his employment. He pleads alternatively

13  that defendants Cady and Luhring had complete discretion to act on

14  behalf of LMUD and therefore were LMUD's policy-makers; that

15  defendants Cady and Luhring acted in accordance with LMUD's de

16  facto policies and procedures in terminating his employment,

17  despite LMUD's official policy of termination for cause only in

18  accordance with its written policies; or that LMUD had a de fact

19  policy of non-enforcement of its written policies regarding

20  employee discipline and termination.

21     Generally speaking, the plaintiff has properly asserted this

22  claim. Under 42 U.S.C. section 1983, a plaintiff must show that the

23  defendants acted under color of law and that their actions deprived

24  the plaintiff of a federally-protected right. <u>Shah v. county of Los</u>

25  <u>Angeles</u>, 797 F.2d 743 (9th Cir. 1986). The plaintiff has pled these

26  elements in his first amended complaint. When the plaintiff alleges

7

that he was deprived of his procedural due process rights, he must allege that he has a liberty or property interest infringed upon by the state and that the procedures attendant to that deprivation were constitutionally insufficient. <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006). A public employee has a protected property interest in his employment. <u>Skelly v. State Personnel Bd.</u>, 15 Cal. 3d 194 (1975). Here, the plaintiff has alleged these elements in his first cause of action.

The defendants move to dismiss this claim on two grounds. First, defendants assert that the claim is not ripe because the plaintiff has not exhausted his state remedies. Second, defendants argue that LMUD cannot be liable under 42 U.S.C. § 1983 on a theory of <i>respondeat superior</i>. The court is unpersuaded by the defendants' contentions.

### a.   Ripeness

In order to pursue a claim under section 1983 for violation of one's procedural due process rights, a plaintiff must first have sought the remedies provided by the state for the deprivation. <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981), <u>overruled in part on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). Because the plaintiff filed his complaint prior to the appeal hearing having occurred, defendants assert that this claim is not ripe.

The Ninth Circuit has consistently held, however, that the exhaustion requirement cannot preclude a section 1983 claim if a resort to state remedies would be futile. <u>See</u>, <u>e.g.</u>, <u>Acevedo-</u>

1   Carranza v. Ashcroft, 371 F.3d 539, 541-42 (9th Cir. 2004);

2   Armendariz v. Penman, 31 F.3d 860 (9th Cir. 1994). In Honey v.

3   Distelrath, 195 F.3d 531 (9th Cir. 1999), the Court of Appeals

4   applied this exception to a section 1983 action challenging the

5   manner of the plaintiff's termination by a state agency.

6   Specifically, the plaintiff had alleged that the defendants

7   violated his due process rights by failing to supply him with the

8   documents that his employer had used to justify the plaintiff's

9   termination. Id. at 532. The plaintiff had successfully challenged

10  his termination via a writ of mandate to the Superior Court. Id.

11  Nonetheless, the Court of Appeals held that his section 1983 action

12  was not barred. It held

13          the defendants in this case had the authority to effect
            the very deprivation complained of, and the duty to
14          afford Honey procedural due process. . . . .[Defendants]
            were responsible for the procedurally deficient
15          termination hearings, and thus the deprivation was
            foreseeable because it was their intent for it to occur.
16          Thus, we find that this case fits squarely within the
            Zinermon / Armendariz exception to the Parratt rule.
17          Additionally, this circuit does not apply Parratt where
            a deprivation occurs because officials are acting
18          according to established procedures -- even if those
            established procedures violate other state or federal
19          laws.

20
    Id. at 534 (internal citation omitted). Consequently, because the
21
    plaintiff had pled in his section 1983 claim that the defendants
22
    violated his due process rights and did so intentionally and
23
    deliberately, in accordance with the state agency's policies,
24
    practices and customs, the court held that the plaintiff's section
25
    1983 claim should proceed. Id.
26

1       Compelled by <u>Honey</u>, the court concludes that the plaintiff's
2   procedural  due  process  claim  is  not  fatally  flawed  by  non-
3   exhaustion. Although the plaintiff filed his complaint prior to the
4   appeal hearing to which he was entitled by LMUD's policies and
5   prior to the final decision of the Board, the plaintiff has alleged
6   that this non-exhaustion was the result of the defendants' actions.
7   Specifically, the plaintiff alleges that the police report that
8   formed the partial basis of his termination was not provided to him
9   until after his Skelly hearing. See First Amended Complaint ¶ 23.
10  He also alleges that the defendants did not issue the written
11  decision of the Skelly hearing until five weeks after the hearing,
12  in contravention of the official LMUD policies. Plaintiff further
13  alleges that, although he filed a timely appeal of the Skelly
14  hearing decision, the appeal hearing had not been held by the time
15  of the plaintiff's filing of his complaint, at which point the
16  hearing was 115 days overdue. Finally, the plaintiff alleges that
17  the  individual  defendants'  conduct  was  "wantonly,  maliciously,
18  oppressively, and in conscious disregard of [his] rights." See <u>id.</u>
19  ¶ 44.

20      In sum, the plaintiff's complaint is not fatally flawed for
21  his failing to fully exhaust his state remedies. The plaintiff has
22  pled  that  he  attempted  to  exhaust  these  remedies,  but  the
23  defendants failed to timely hold the hearing that the plaintiff
24  sought. Furthermore, the plaintiff alleges that the process that
25  he was provided was deficient, in that it was not in accordance
26  with LMUD's official, written policies. Finally, the plaintiff has

1   alleged that the individual defendants acted with deliberateness

2   and intent. Under _Honey_, _Parratt_ does not bar the plaintiff's

3   section 1983 claim when such allegations have been pled. _See Honey_,

4   195 F.3d at 534.

5            **b.   Liability of LMUD**

6        There is no _respondeat superior_ liability for a state agency

7   when its agents alone are alleged to have violated a plaintiff's

8   due process rights. _Monell v. Dep't of Social Servs._, 436 U.S. 658,

9   692 (1978). A state or municipal agency is liable, however, when

10  it has a policy, custom, or practice of deliberate indifference to

11  the plaintiff's rights, which caused the constitutional violation.

12  _City of Canton v. Harris_, 489 U.S. 378, 385 (1989).

13       Here, the plaintiff has adequately pled that LMUD's policy,

14  practice, or custom of deliberate indifference to employees' rights

15  caused his deprivation of his procedural due process rights.

16  Although he pleads that LMUD had a formal policy proscribing

17  particular procedures to be followed for disciplining or

18  terminating an employee, he has also pled three alternative

19  theories of LMUD or its policy-makers having policies and

20  procedures causing the constitutional deprivation of the plaintiff.

21  _See_ First Amended Complaint ¶¶ 45-47. This suffices to state a

22  section 1983 claim against LMUD.

23       Consequently, the defendants' motion is denied as to the

24  plaintiff's first cause of action.

25  ////

26  ////

1    **2.    Second   Cause   of   Action:   Deprivation   of   Federal**

2         **Substantive Due Process Rights**

3    The defendants assert that, for the same reasons that the

4    plaintiff's first cause of action is barred, so to is his second

5    cause of action. The court cannot agree.

6    When a constitutional deprivation is sufficiently serious, a

7    plaintiff's substantive due process rights may have been infringed.

8    Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989). In

9    determining whether substantive due process rights have been

10   violated, the court considers the need for the government action,

11   whether the action was tailored to that need, the extent of the

12   harm inflicted, and whether the action was taken in good faith.

13   Sinaloa Lake Owners' Assn. v. City of Simi Valley, 882 F.2d 1398,

14   1407 (9th Cir. 1989), overruled in part by Armendariz v. Penman,

15   75 F.3d 1311, 1325-26 (9th Cir. 1996). The existence of state

16   remedies does not preclude a plaintiff from bringing a section 1983

17   action for substantive due process violations. Wood, 879 F.2d at

18   589.

19   Here, the plaintiff has adequately pled a cause of action for

20   deprivation of his substantive due process rights. He alleges that

21   he possessed a property interest in his employment, which, as

22   stated above, is a protectable property interest. See Skelly, 15

23   Cal. 3d 194. He alleges that the defendants fabricated a false and

24   pretextual basis for his termination, and acted arbitrarily,

25   capriciously, and with an illegal and wrongful motive. This

26   suffices to state a cause of action. See Wood, 879 F.2d at 589.

1    The plaintiff has also adequately pled LMUD's liability for
2  the violation of his substantive due process rights. As with his
3  first cause of action, in his second cause of action the plaintiff
4  alleges three alternative theories of LMUD or its policy-makers
5  having policies and procedures causing his constitutional
6  deprivation. <u>See</u> First Amended Complaint ¶¶ 58-60. This suffices
7  to state a section 1983 claim against LMUD.

8    The defendants' motion is therefore denied as to the
9  plaintiff's second cause of action.

10   **3.   Third Cause of Action: Conspiracy to Deprive the**
11        **Plaintiff of His Due Process Rights**

12   In his third cause of action, the plaintiff alleges that the
13 defendants engaged in a conspiracy to deprive him of his due
14 process rights. He specifically excepts LMUD from this allegation.
15 Therefore, the defendants' motion is granted as to LMUD for this
16 cause of action. The plaintiff is given leave to amend.

17   **4.   Requirement that Writ of Mandate Be Sought for State**
18        **Claims**

19   The defendants assert that the plaintiff's fifth, sixth, and
20 seventh causes of action are barred because the plaintiff did not
21 seek a writ of mandate in state court prior to filing this action.
22 Typically, failure to seek administrative mandamus bars a plaintiff
23 from seeking other relief. <u>Williams v. Housing Authority of City</u>
24 <u>of Los Angeles</u>, 121 Cal. App. 4th 708 (2004); <u>Briggs v. City of</u>
25 <u>Rolling Hills Estates</u>, 40 Cal. App. 4th 637 (1995). This rule is
26 not an exhaustion requirement, but rather an iteration of the

13

1  collateral estoppel rule. <u>Johnson v. City of Loma Linda</u>, 24 Cal.

2  4th 61, 69-70 (2000); <u>Knickerbocker v. City of Stockton</u>, 199 Cal.

3  App. 3d 235, 240-41 (1988). The purpose of the rule is to prevent

4  a plaintiff from circumventing the administrative avenues of relief

5  available to him. <u>Johnson</u>, 24 Cal. 4th at 69-70.

6      A writ of mandamus, however, can only be sought from a final

7  administrative decision. <u>Cumar v. Nat'l Med. Enter., Inc.</u>, 218 Cal.

8  App. 3d 1050, 1055 (1989); <u>Sierra Club v. City of Hayward</u>, 28 Cal.

9  3d 840, 849 (1981). When the state agency itself has prevented the

10 decision from becoming final, California courts have held that the

11 plaintiff cannot be barred from seeking his remedy in a separate

12 suit. <u>Mooney v. Bartenders Union Local No. 284,</u> 48 Cal. 2d 841

13 (1957); <u>Holderby v. Int'l Union of Operating Eng'rs</u>, 45 Cal. 2d 843

14 (1955). As the California Supreme Court explained, "If the

15 organization fails to apply its appellate machinery after it is

16 properly invoked and in effect prevents an appeal from being taken,

17 the aggrieved party . . . need not pursue such an appeal further."

18 <u>Holderby</u>, 45 Cal. 2d at 849; <u>see also</u> <u>Mooney</u>, 48 Cal. 2d at 843-44;

19 <u>Sahlolbei v. Providence Healthcare, Inc.</u>, 112 Cal. App. 4th 1137,

20 1152-53 (2003).

21      Here, one of the injuries of which the plaintiff complains is

22 the defendants' failure to hold an appeal hearing for his

23 termination, after he timely requested it. The failure of the

24 defendants to adhere to their own policies in providing the

25 plaintiff with an appellate hearing cannot later be invoked by the

26

defendants to prevent the plaintiff from seeking his remedy in this court. See Holderby, 45 Cal. 2d at 849. Additionally, as the plaintiff observes, a writ of mandamus may only be taken from a final agency decision, and defendants' alleged conduct in delaying -- perhaps indefinitely -- plaintiff's appeal hearing prevented the defendants' decision from becoming final. In such a situation, it is not improper for the plaintiff to seek relief in this court. See Mooney, 48 Cal. 2d at 843-44.

**5.    Fifth Cause of Action: Breach of Express and Implied Contract**

In his fifth cause of action, the plaintiff alleges that defendant LMUD breach his express or implied employment contract. Public employment is not enforced by contract, but by state statute. Miller v. State of California, 18 Cal. 3d 808 (1977). This rule applies to civil service and non-civil service employment. Kim v. Regents of University of California, 80 Cal. App. 4th 170, 164 (2000). Neither an express nor an implied contract can restrict the reasons for, or manner of, termination of public employment provided by California statue. Portman v. County of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993). Therefore, the plaintiff can neither maintain a cause of action for breach of contract against the defendants, nor derivative claims based on that action. See Shoemaker v. Myers 52 Cal. 3d 1 (1990); Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 620, 631 (1995).

15

1    The plaintiff directs this court to <u>Summers v. City of</u>

2  <u>Catherdral City</u>, 225 Cal. App. 3d 1047, 1065 (1990), for the

3  proposition that a breach of employment contract action may be

4  based on a public employer's violation of its own rules,

5  regulations, or policies in terminating an employee. The court in

6  <u>Summers</u>, however, characterized such a claim as specifically not

7  based on contract theories. <u>Id.</u> at 1066, fn. 12, construing <u>Read</u>

8  <u>v. City of Lynwood</u>, 173 Cal. App. 3d 437, 443 (1985). <u>Read</u>, the

9  case on which the <u>Summers</u> court relied, has since been disapproved

10 of by California courts. <u>See</u> <u>Hill v. City of Long Beach</u>, 33 Cal.

11 App. 4th 1684, 1691-92 (1995); <u>Kemmerer v. County of Fresno</u>, 200

12 Cal. App. 3d 1426, 1434 (1988). This court fails to see how, even

13 under <u>Read</u>, the plaintiff can assert a breach of contract claim

14 against LMUD. Additionally, if his contention is that LMUD did not

15 follow its policies in terminating him, it appears that that

16 allegation is encompassed in his first and second causes of action.

17 As such, the defendants' motion to dismiss is granted as to the

18 fifth claim, with leave to amend.

19      **6.   Sixth Cause of Action: Infliction of Emotional Distress**

20      In his sixth cause of action, the plaintiff alleges that the

21 defendants are liable for infliction of emotional distress. The

22 defendants assert that this claim is barred by the California Tort

23 Claims Act. The court denies the defendants' motion as to this

24 claim.

25      The California Tort Claims Act bars liability for any public

26 entity or employee for injuries caused by their act or omissions,

1  unless otherwise provided by statute. Cal. Gov't Code §§ 815, 820.

2  The legislative committee comment for this section described the

3  purpose of this statute as "abolish[ing] all common law or

4  judicially declared forms of liability for public entities, except

5  for such liability as may be required by the state or federal

6  constitution. . . ." Prior to filing a suit against a government

7  entity, a written claim must be presented to the public entity's

8  board. Id. § 945.4.  A claim must be filed with the board even if

9  the entity is immune from liability. Id. § 950.2. A plaintiff is

10 excepted from section 945.4 if she pleads and proves that she

11 neither knew nor had reason to know, within the time required for

12 presenting her claim to the relevant state board, that her injury

13 was caused by the public entity or by a public employee in the

14 scope of his employment. Id. § 950.4. Otherwise, the failure to

15 have filed a claim with the relevant government board is fatal to

16 the plaintiff's cause of action. State v. Superior Court (Bodde),

17 32 Cal. 4th 1234, 1239 (Cal. 2004). A plaintiff must allege

18 compliance with the state presentment requirement in her complaint.

19 Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 627

20 (9th Cir. 1998); Dujardin v. Ventura County General Hospital, 69

21 Cal. App. 3d 350, 355 (Cal. Ct. App. 1977).

22     An exception to the presentment requirement exists where the

23 defendant state official is alleged to have committed an

24 intentional tort, such as intentional infliction of emotional

25 distress. Id. § 815.3. That claim may be brought so long as the

26 plaintiff alleges that the official's conduct was intentional and

1 so long as the state agency and the official are named as co-
2 defendants. See id.

3      Here, the plaintiff has not pled that he presented his claim
4 for intentional infliction of emotional distress to the defendants'
5 board, as required by Government Code sections 945.4 and 950.2. He
6 has pled, however, that the individual defendants acted with intent
7 to cause the plaintiff severe emotional distress, and he has
8 directed his claim against both LMUD and the individually named
9 defendants. This is adequate to bring his claim within the
10 exception to the presentment requirement. See Cal. Gov't Code §
11 815.3.  The defendants' motion is denied as to this claim.

12      **7.    Seventh Cause of Action: Interference With Contract**

13      In his seventh cause of action, the plaintiff alleges that
14 defendants Cady and Luhring interfered with the plaintiff's
15 employment contract with LMUD. As stated above, the plaintiff's
16 employment with LMUD was not governed by contract. Consequently,
17 this claim must fail.

18 **B.   Motion to Strike**

19      The defendants seek to strike two parts of the plaintiff's
20 complaint. First, the defendants argue that the plaintiff's request
21 for exemplary damages for intentional infliction of emotional
22 distress should be struck because exemplary damages are not as a
23 matter of law recoverable against LMUD, as a public entity.
24 Defendants are correct. See Cal. Gov't Code §§ 818, 825(e).
25 Therefore, paragraph 82 of the plaintiff's First Amended Complaint
26 is struck insofar as it alleges a claim for exemplary damages

18

1 against LMUD.[2]

2    Second, the defendants ask the court to strike those portions

3 of the complaint in which the plaintiff seeks attorneys fees for

4 his state or common law claims. <u>See</u> First Amended Complaint ¶¶ 74,

5 79, 83, 90, 95. Under California law, attorneys fees may only be

6 awarded when specifically permitted by statute. Cal. Code Civ. P.

7 § 1021. The plaintiff has failed to plead that a state statute

8 authorizes an award of attorneys fees for these causes of action.

9 Although he cites to California Code of Civil Procedure section

10 1021.5, which allows an award of attorneys fees for "private

11 attorney general" actions, he has not pled this in his complaint.

12 Additionally, the plaintiff has cited no authority in this circuit

13 that permits an award of attorneys fees for state claims that are

14 pendant to 42 U.S.C. section 1983 claims.

15    Nevertheless, the plaintiff's requests for attorneys fees

16 should not be struck, as they are not "redundant, immaterial,

17 impertinent, or scandalous," nor are they barred as a matter of

18 law. <u>See</u> Fed. R. Civ. P. 12(f). Instead, the requests are merely

19 inadequately pled. As such, the court denies the motion to strike

20 the claims for attorneys fees. These claims are dismissed with

21 leave to amend.

22                          **IV. CONCLUSION**

23    For the reasons above, the court orders:

24 _____

25    [2]In the second amended complaint, the plaintiff has explicitly
excepted LMUD from the request for punitive damages. <u>See</u> Second
26 Amended Complaint ¶ 93.3.

1.   The defendants' motion to dismiss is GRANTED as to the plaintiffs' third, fifth, and seventh causes of action, with leave to amend;

2.   The defendants' motion to dismiss is DENIED as to the plaintiffs' first, second, and sixth cause of action;

3.   The defendants' motion to strike is GRANTED as to paragraph 82 of the First Amended Complaint;

4.   The defendants' motion to strike is DENIED as to the plaintiffs' claims for attorneys fees. These claims are dismissed with leave to amend.

5.   The plaintiff is GRANTED leave to amend his complaint. The amended complaint must be filed within 15 days of the date of this order.

IT IS SO ORDERED.

DATED:   January 28, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT