UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN TREVINO,
an individual,

         Plaintiff,

    v.

LASSEN MUNICIPAL UTILITY
DISTRICT, et al.,

         Defendants.
_____/

NO. CIV. S-07-2106 LKK/DAD

O R D E R

    Plaintiffs Steven and Amy Trevino have brought suit against Lassen Municipal Utility District ("LMUD"), Steven Trevino's former employer, and the individually named defendants who are employees of LMUD for alleged harms they suffered related to the termination of Steven's employment.

    Defendants LMUD, Cady, and Luhring have moved to dismiss or strike all claims of Amy Trevino, and to dismiss Steven Trevino's fifth and seventh causes of action. The court resolves the motions on the papers and after oral argument.

////

1

# I. BACKGROUND AND PLAINTIFFS' ALLEGATIONS[1]

## A. Procedural History

Plaintiffs filed their complaint in October 2007. Later that month, they filed the First Amended Complaint. Defendants subsequently moved to dismiss and strike portions of that complaint.

While the motion was pending, the court held its initial scheduling conference, resulting in a Scheduling Order issued on January 16, 2008. The order permitted the plaintiff Steven Trevino to file an amended complaint within thirty days of the date of the order. The Second Amended Complaint was filed on January 24, 2008.

On January 28, 2008, the court issued its order disposing of the defendants' motions to dismiss and strike. Because of the significant similarities between the First and Second Amended Complaints, the court stated that its order applied to the Second Amended Complaint to the extent of the overlap between the two. The order granted the defendants' motions to dismiss and to strike in part, allowing the plaintiff fifteen days to file a Third Amended Complaint. It is against that complaint that the defendants' present motions have been brought.

## B. Allegations of the Third Amended Complaint

The court described the plaintiffs' allegations of their First and Second Amended Complaints in detail in its January 29, 2008 order. The present motions are brought against changes in the Third

---

[1] The allegations are taken from the plaintiffs' Third Amended Complaint, unless otherwise noted.

2

Amended Complaint that were not addressed in that order.[2]

First, Amy Trevino has been added as a plaintiff. When the complaint was originally filed, Amy Trevino was listed as a plaintiff but in the First Amended Complaint, filed a few weeks later, she no longer was. She was again named as a plaintiff in the Second and Third Amended Complaints. In the Third Amended Complaint, she alleges that as a result of the defendants' acts, she has been "deprived of the care, companionship, society, and guidance of her husband," resulting in injury to her marital relationship. Third Amended Complaint ¶¶ 48, 61, 71.

Second, the plaintiffs have recharacterized their fifth cause of action. In the Third Amended Complaint, the plaintiffs allege that LMUD violated its own policies and procedures for terminating plaintiff Steven Trevino, causing damages to him.[3]

Finally, in their seventh cause of action, the plaintiffs seek an injunction requiring defendants to comply with their own policies and procedures in their disciplinary actions.

////

---

[2] As explained *supra*, the January 29, 2008 order was issued in response to defendants' Motion to Dismiss and Strike, which had been brought against the plaintiffs' First Amended Complaint. While the motion was under submission, the plaintiffs filed their Second Amended Complaint. Therefore, although the Third Amended Complaint contains some allegations that were made in the Second Amended Complaint but not the First Amended Complaint, the present motion represents the defendants' first opportunity to address these allegations.

[3] Previously, in the First Amended Complaint, this claim had been characterized as a breach of contract claim, which the court dismissed with leave to amend in its January 29, 2007 order.

3

1 **II. STANDARDS**

2 **A. Standard for Dismissal Pursuant to Federal Rule of Civil**
3 **Procedure 12(b)(6)**

4 On a motion to dismiss, the allegations of the complaint must
5 be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).
6 The court is bound to give the plaintiff the benefit of every
7 reasonable inference to be drawn from the "well-pleaded"
8 allegations of the complaint. See Retail Clerks Intern. Ass'n,
9 Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).
10 Thus, the plaintiff need not necessarily plead a particular fact
11 if that fact is a reasonable inference from facts properly alleged.
12 See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)
13 (inferring fact from allegations of complaint).

14 In general, the complaint is construed favorably to the
15 pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The
16 court may not dismiss the complaint if there is a reasonably
17 founded hope that the plaintiff may show a set of facts consistent
18 with the allegations. Bell Atlantic Corp. v. Twombly, 127 S.Ct.
19 1955, 1967-69 (2007). In spite of the deference the court is bound
20 to pay to the plaintiff's allegations, however, it is not proper
21 for the court to assume that "the [plaintiff] can prove facts which
22 [he or she] has not alleged, or that the defendants have violated
23 the . . . laws in ways that have not been alleged." Associated
24 General Contractors of California, Inc. v. California State Council
25 of Carpenters, 459 U.S. 519, 526 (1983).
26 ////

4

**B.   Standard for Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A party may bring on a motion to strike within 20 days after the filing of the pleading under attack.  The court, however, may make appropriate orders to strike under the rule at any time on its own initiative.  Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so.  See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1380;  See also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See 5A Wright & Miller, supra, at § 1380.

### III. ANALYSIS

The defendants move to dismiss or strike all allegations asserted by plaintiff Amy Trevino. The defendants also move to dismiss the plaintiffs' fifth and seventh causes of action. As explained below, the court denies the motion to strike and grants the motion to dismiss only as to plaintiffs' fifth cause of action.

5

**A.   Allegations of Plaintiff Amy Trevino**

The defendants move to strike all allegations by Amy Trevino on the grounds that she was joined as a plaintiff in contravention of the court's scheduling order. Alternatively, they move to dismiss for failure to state a claim. The court denies both motions.

**1.   Motion to Strike**

Once a scheduling order has been issued, a motion to amend the complaint is treated as a motion to amend the scheduling order under Federal Rule of Civil Procedure 16(b) and will be granted only upon a showing of good cause. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992). "Good cause" is shown where the party seeking leave to amend has demonstrated sufficient diligence. Id. at 609.

Good cause may be found to exist where the moving party shows that she diligently assisted the court with creating a workable scheduling order, that she is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that she was diligent in seeking an amendment once it became apparent that she could not comply with the scheduling order. Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999)(citations omitted). A court may supplement its determination by noting the prejudice to the other party. Johnson, 975 F.2d at 609. If good cause is found, then the court turns to Rule 15 to determine whether the amendment sought should be granted. Id. at

6

1  608.

2      Here, the court instructed the parties in its January 16, 2008
3  scheduling order that the <u>Johnson</u> standard for amendment would be
4  required, except that the plaintiff was granted thirty days to file
5  an amended complaint and the defendants were given thirty days
6  thereafter to answer. At the time of the scheduling order, the
7  operative complaint was the First Amended Complaint, which lists
8  "Steven Trevino, an individual," as the sole plaintiff. Amy Trevino
9  is not mentioned in it, nor are any of the causes of action brought
10 on her behalf. In his opposition to the instant motion, the
11 plaintiffs characterize this omission as an accidental oversight.
12 The Second Amended Complaint, timely filed in accordance with the
13 Scheduling Order, included Amy Trevino as a plaintiff and alleged
14 causes of action on her behalf. It is undisputed that the plaintiff
15 did not move under Rule 16 to amend the Scheduling Order in order
16 to add Amy Trevino.  Nonetheless, the court declines to strike Amy
17 Trevino and her allegations from the Third Amended Complaint.

18     Although, to say the least, it is not obvious that Amy Trevino
19 came to be accidentally omitted not only in the caption of the
20 Second Amended Complaint but also throughout the text of that
21 complaint, the plaintiffs have appeared entirely diligent in
22 assisting the court with developing a scheduling order and
23 otherwise adhering to the orders of the court. Moreover, because
24 the Scheduling Order expressly allowed plaintiff Steven Trevino to
25 file an amended complaint, it is possible that he understood this
26 ////

7

to permit the addition of Amy Trevino as a plaintiff.[4]

Additionally, the court perceives no prejudice to the defendants in allowing Amy Trevino to be re-alleged as a plaintiff. As explained, she had been named as a plaintiff in the original complaint. Furthermore, the case is only in its initial stages, with discovery open until November 2008 and the dispositive motion deadline in January 2009. Finally, although the defendants contend that they would have addressed Amy Trevino's claims in their first motion to dismiss, the fact is that defendants are now able to move against those claims in the instant motion. There seems no prejudice to defendants in permitting Amy Trevino to be named as a plaintiff and assert causes of action against defendants. Defendants' motion to strike is denied.[5]

**2.  Motion to Dismiss**

The defendants move, alternatively, to dismiss Amy Trevino's claims on the basis that they do not state cognizable causes of action for violations of her due process rights. The court denies the motion.

In the plaintiffs' first, second, and third causes of action, Amy Trevino alleges that the defendants violated her procedural and substantive due process rights by depriving her of her "constitutionally-protected right to be free from unconstitutional

---

[4] The court acknowledges that its construction at page 2:8-2:15 of its Scheduling Order is not the model of clarity.

[5] The court's generosity in this matter is not to be taken as a license to ignore its orders.  Counsel shall pay a sanction of $150 to the court for its failure to adhere to the court's order.

8

government-imposed impact to her marital relationship with her husband" and the "care, companionship, society, and guidance of her husband." In the opposition to defendants' motion, the plaintiffs clarify that these are not claims for loss of consortium, but rather allege that defendants violated Amy Trevino's "fundamental liberty interest in the right to familial companionship and society." Opposition to LMUD Defendants' Second Motion to Dismiss, at 6.

The Ninth Circuit has recognized that family members have a liberty interest in their companionship with one another such that a state actor's interference with it may constitute a violation of procedural or substantive due process rights. Smith v. City of Fontana, 818 F.2d 1411, 1419-20 (9th Cir. 1987) (overruled on other grounds by Hodger-Durgin v. De La Fina, 199 F.3d 1037 (9th Cir. 1999)); see also Kelson v. City of Springfield, 767 F.2d 651, 654-55 (9th Cir. 1985). Interference with that interest is cognizable under § 1983. Smith, 818 F.2d at 1420. The plaintiff need not show that the state actor acted with malice in order to succeed in this claim; a showing of deliberate indifference or "more than mere[] negligen[ce]" is sufficient.[6] Id.; Byrd v. Guess, 137 F.3d 1126,

---

[6] At oral argument, counsel for defendants seemed to suggest that this standard could only be met by a permanent deprivation, for example, the death of a family member. While it appears that the Ninth Circuit has only considered this type of due process claim where the plaintiff alleges a permanent loss of the society and companionship of his or her family member, see, e.g., Smith, 818 F.2d at 1418-19 (death of a parent), it does not follow that only in such scenarios would the outcome of the defendants' conduct be sufficiently foreseeable as to satisfy the deliberate indifference standard. It would appear as a matter of human

1134 (9th Cir. 1998).

Although the Ninth Circuit has appeared to have encountered these claims only in the context of child-parent relationships, its reasoning seems to apply equally when a spousal relationship at issue.[7] In Smith, the court held that a liberty interested inhered to the parent-child relationship not because of the custodial nature of that relationship, but because of the companionship interest involved. Smith, 818 F.3d at 1419. The court considered the Klu Klux Act, the precursor to § 1983, finding "compelling support" in its legislative history, which indicated that its purpose was to provide a remedy "for wrongs . . . done," including, for example, the murder of a woman's husband or a child's father. Id.; see also Kelson, 767 F.2d at 654 (permitting § 1983 claim for interference with the parent-child relationship because "substantive family rights . . .have long been considered 'the basic civil rights of man.'").

The Ninth Circuit's characterization of the liberty interest

---

experience that there may be facts discoverable by plaintiff from which a reasonable jury could find that the defendants acted with deliberate indifference to Amy Trevino's right of familial relationship and society in the actions they took in disciplining and eventually terminating Steven Trevino. See Byrd, 137 F.3d at 1134 (stating deliberate indifference standard).

[7] In Byrd, the wife of a decedent and her mother (the decedent's mother-in-law) claimed that the state had unconstitutionally infringed on their liberty interests in the society and companionship of the decedent, brought under section 1983. The Ninth Circuit did not confront the question of whether a wife and a mother-in-law possess a cognizable interest in their respective relationships with the decedent. See Byrd, 137 F.3d at 1133. Instead, the court held that the trial court had not employed an improper standard for the defendants' *mens rea*. Id. at 1134.

10

present in the parent-child relationship resounds also in the marital relationship. The Supreme Court has long recognized both of these relationships as among the most intimate of an individual's life and, consequently, most deserving of protection from state interference.[8] See, e.g., Bd. of Dir. of Rotary Intern. v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 618-19 (1984); Quilloin v. Walcott, 434 U.S. 246 (1978). These interests are, of course, not inviolable, see, e.g., Moore v. City of East Cleveland, 431 U.S. 494 (1977), but that alone does not require dismissal of Amy Trevino's causes of action. This circuit's cases, as well as those of the Supreme Court, suggest that there is nothing inconsistent with permitting a spouse to pursue a claim for interference with her liberty interest in the companionship of her spouse.

Moreover, despite defendants' argument, there is nothing in these cases that suggests that this cause of action is only available when the plaintiff has been completely deprived of the companionship of the family member, for example, through death or legal termination of the relationship. See Smith, 818 F.2d at 1418-19 (characterizing the claim as the state's "interference with" family relations; also relying on Pierce v. Society of Sisters, 268 U.S. 510 (1925), which had held that parents' liberty rights were

---

[8] Because of the primacy of the marital relationship in the most personal and fundamental aspects of an individual's life, see, e.g., Roberts, 468 U.S. at 620, the marital relationship is distinguishable from a sibling relationship, which the Ninth Circuit has held does not give rise to this type of a due process claim. See Ward v. City of San Jose, 967 F.2d 280 (9th Cir. 1991).

11

infringed upon by a state regulation that required children to be educated in public schools). Although the nature and irreversibility of the interference may be relevant to a fact-finder's determination of what damages may be appropriate, it does not appear dispositive for the question of whether the claim is cognizable.

Accordingly, defendants' motion to dismiss Amy Trevino's causes of action is denied.

**B.  Plaintiffs' Fifth Cause of Action**

In the fifth cause of action, plaintiffs allege that LMUD violated its own policies and procedures in terminating Steven Trevino. It alleges that LMUD had adopted and implemented policies providing for termination only upon a showing of good cause and that it failed to follow these procedures in its discipline proceedings and, ultimately, the termination of Steven Trevino. He alleges that this caused him damages. Defendants move to dismiss this cause of action.

In plaintiffs' First Amended Complaint, this cause of action had been characterized as a breach of contract claim. The court dismissed it with leave to amend, on the grounds that public employment is governed by statute rather than contract. Although the plaintiffs no longer plead this claim under contract law principles, they nevertheless have failed to plead a cause of action upon which relief may be granted.

////

////

The California Government Claims Act[9] provides that a "public entity is not liable for injury [arising] out of an act or omission," except as provided by statute. Cal. Gov't. Code § 815. The plaintiff relies on Summers v. City of Cathedral City, 225 Cal. App. 3d 1047 (Cal. Ct. App. 1990) to authorize his claim against LMUD for failure to follow its own policies in disciplining and terminating him. Aside from the court's previous observation that the Summers' holding appears to no longer be good law in California,[10] Summers is not a "statute" that would authorize the plaintiff's recovery, which is what Government Code § 815 requires. See Odello Bros. v. County of Monterey, 63 Cal. App. 4th 778, 792-93 (Cal. Ct. App. 1998) ("public entities may be held liable only if a statute (not including a charter provision, ordinance, or regulation) is found declaring them liable," quoting Gov't Code § 815 Leg. Com. Comment); Gov't Code § 815 Leg. Com. Comment ("As originally introduced, this section used 'enactment' instead of 'statute.' The word 'statute' was substituted because the terms and conditions of liability of public entities are matters of statewide concern and should be subject to uniform rules established by the action of the Legislature."). Put plainly, the plaintiff has brought suit for damages for LMUD's acts or failures to act but has not identified a statute that would permit his recovery. This

---

[9] The California Government Claims Act is now the correct appellation of what had been the Tort Claims Act. City of Stockton v. Superior Court, 42 Cal. 4th 730 (2007).

[10] See Order, January 29, 2008, at 16.

13

1  deficiency is fatal to plaintiff's claim.

2  When a plaintiff complains that a public employer has
3  wrongfully terminated him or otherwise acted improperly in the
4  course of his termination, the California courts appear to have
5  consistently held that the employer is immune from liability under
6  the Government Claims Act.  For instance, in <u>Ross v. San Francisco</u>
7  <u>Bay Area Rapid Transit Dist.</u>, 146 Cal. App. 4th 1507, 1513-17 (Cal.
8  Ct. App. 2007), the plaintiff sued his employer, a public transit
9  district, for wrongful termination. Among other allegations, he
10 alleged that the district falsely accused him of initiating a work
11 stoppage and conducted a disciplinary hearing and terminated him
12 while he was absent on disability leave. <u>Id.</u> at 1511. He
13 characterized this claim as wrongful termination in violation of
14 public policy. <u>Id.</u>

15 The California Court of Appeals held that this claim was not
16 permitted under the Government Claims Act, as the district was
17 immune from liability. <u>Id.</u> at 1517. The court observed that the
18 Government Claims Act not only bars causes of action against the
19 state unless there is an authorizing statute, it also specifically
20 grants immunity for the state agency's institution or prosecution
21 of a judicial or administrative proceeding. <u>Id.</u> at 1515-17 (citing
22 Cal. Gov't Code §§ 815.2, 821.6). Therefore, the plaintiff's cause
23 of action for his termination was barred because it was not
24 authorized by statute, and the defendant was immune from liability
25 for its actions centering around the discipline proceedings. <u>Id.</u>;
26 <u>see</u> <u>also</u> <u>Hardy v. Val</u>, 48 Cal.2d 577, 581 (Cal. 1957) (immunity for

14

state defendant who maliciously initiated groundless employment termination proceedings against plaintiff); Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1432, 1436-37 (Cal. Ct. App. 1988) (state employer immune from liability for initiation of disciplinary proceedings against plaintiff, which plaintiff alleged had included "false and malicious statements" made by defendants).

Accordingly, the defendant's motion to dismiss is granted as to plaintiffs' fifth cause of action, without leave to amend.

**C.   Plaintiffs' Seventh Cause of Action**

Defendants move to dismiss the plaintiffs' seventh cause of action, seeking injunctive relief, on the grounds that the threat of future harm to the plaintiffs is only speculative and that a court cannot order a party merely to obey the law.

First, the prospective harm to which the plaintiffs allege they may be subject is not unduly speculative. The defendants are correct in asserting that an injunction may only issue where there is a "cognizable danger of recurrent violation." United States v. W.T. Grant Co., 345 U.S. 629, 633-34 (1953); see also Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 766 n. 3 (1994). In considering whether this standard has been met, the court looks to the defendants' expression of their willingness to undertake the actions sought to be enforced via injunction, the effectiveness of the defendants' efforts to act in accordance with those intentions, and the character of the past violations. W.T. Grant, 345 U.S. at 633-34.

Here, the plaintiffs' prayer for injunctive relief is not

1  improper, as the complaint's allegations suggest a sufficiently
2  cognizable danger of recurrent violations. As described in fuller
3  detail in the court's January 29, 2008 order, the complaint alleges
4  a series of incidents spanning several months and involving several
5  of LMUD's agents. These allegations, if proven to be true,
6  represent significant and recurrent violations of the plaintiffs'
7  due process and statutory rights. In the course of the instant
8  litigation, the court is unaware of any representations made by
9  defendants disavowing these alleged incidents and the course of
10 decision-making that would have led to them. Defendants' offer to
11 reinstate Steven Trevino to his former position would not cure
12 these alleged violations nor offer any assurance that they would
13 not recur. At this stage of the proceedings, the plaintiffs have
14 sufficiently pled allegations that, if true, may merit the issuance
15 of an injunction. Dismissal of their seventh cause of action,
16 therefore, is not warranted on this basis.
17    The defendants also move to dismiss this cause of action on
18 the grounds that a court may not enjoin a defendant to simply "obey
19 the law," because such an injunction would be overly broad and
20 unenforceable. The argument does not lie.
21    The plaintiffs' allegations against the LMUD defendants center
22 around those defendants' failure to adhere to the written policies
23 in the course of engaging in disciplinary proceedings against
24 Steven Trevino and his eventual termination. Consequently, if the
25 court were to issue an injunction, it would not be simply to "obey
26 the law." Assuming LMUD's written policies were before the court,

16

the court could craft an injunction that was tailored specifically to those policies, and would give the defendants adequate notice as to what conduct was required of them and, by extension, what was prohibited. Certainly, at this stage of the proceedings, the court cannot conclude that the complaint is so deficient that any injunctive relief based upon it would necessarily be unenforceable as a matter of law. Defendants' motion is denied.

## IV. CONCLUSION

Accordingly, the court orders as follows:

1.  Defendants' motion to strike Amy Trevino's allegations from the Third Amended Complaint is DENIED;
2.  Defendants' motion to dismiss the plaintiffs' fifth cause of action is GRANTED. Plaintiffs are given fifteen (15) days from the date of this order to file an amended complaint.
3.  Defendants' motion to dismiss is DENIED as to all other causes of action.

IT IS SO ORDERED.

DATED: April 9, 2008.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT